UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PICACHO HILLS UTILITY COMPANY, INC.,

                              Case No. 11-13-10742 TL

    Debtor.

**MEMORANDUM OPINION**

Debtor Picacho Hills Utility Company, Inc. is a small water and sewer utility in Las Cruces, New Mexico. Bright View Land Company, Inc. ("Bright View") filed a proof of claim in Debtor's bankruptcy case for $931,547.91, to which the Debtor objected. For the reasons set forth below, Debtor's objection is overruled.

I.     FACTS

The Court finds the following:[1]

Debtor, a New Mexico corporation, is a public utility as defined in section 3(G) of the New Mexico Public Utility Act, N.M.S.A. § 62-3-1 et seq. Debtor provides water and sewer service to approximately 1000 houses in and around the Picacho Hills development near Las Cruces, New Mexico. Debtor is regulated by the New Mexico Public Regulation Commission (the "Commission"), and is wholly owned by Stephen C. Blanco ("Blanco"), Debtor's president.

On July 25, 2003, Debtor and Bright View entered into a Water and Sewer Extension Agreement (the "Agreement"). Under Section VI of the Agreement, Bright View agreed to construct and convey to Debtor certain water and sewer lines needed to extend utility service to Bright View's "Coronado Ridge" subdivision in Picacho Hills. Upon completion and

---

[1] Debtor and Bright View waived their right to an evidentiary hearing and consented to the Court ruling on the papers filed in connection with Debtor's objection. The Court considered the untimely affidavit of Randy Travis filed by Debtor, which ultimately had no bearing on this ruling.

conveyance of the water and sewer lines, Debtor agreed to reimburse Bright View, over time, for the cost of construction (the "Construction Cost"). The reimbursement obligation consists of 40 annual payments, each equal to $1/40^{th}$ of the Construction Cost (the "Reimbursement Obligation").[2] No interest is owed.

The Agreement contained the following proviso regarding Debtor's obligation to pay the Reimbursement Obligation:

> [I]n the event the Public Regulation Commission for the State of New Mexico determines that the cost of said sewer and water lines may not be included in PHUC's rate base, then in such event, PHUC shall have no further obligation to make the payments due under the terms of this paragraph.

*See* Agreement, section VI(A).

In a separate section, the Agreement also obligated Bright View to pay Debtor a total of $345,060 for "the cost of necessary improvements to the sewer plant to serve Coronado Ridge subdivision only" (together, the "Improvement Fees"). *See* Agreement, section III.

Debtor did not file the Agreement with the Commission, did not notify the Commission of the proposed line extension, and did not file an application to include the Construction Cost in its rate base.

Bright View built the necessary sewer and water lines for service to the Coronado Ridge subdivision and conveyed them to Debtor. Bright View filed a proof of claim, no. 8-1 (the "Claim"), for the unpaid balance of the Reimbursement Obligation. Bright View asserts that the amount owed is $931,547.91 (the "Claim Amount").

On or about October 23, 2008, the Commission commenced Case No. 08-00315-UT (the "Administrative Proceeding") to investigate Debtor's compliance with the Public Utility Act and the Commission's rules, regulations, and orders (together, the "Commission Rules"). The

---

[2] According to Bright View, it paid $1,026,043.60 to construct the water and sewer line extensions.

hearing examiner, Carolyn R. Glick, held a final hearing in the Administrative Proceeding conducted in February, 2010. On May 26, 2010, the hearing examiner completed her Final Recommended Decision ("FRD").[3] The FRD is 88 pages long.

The FRD addressed Debtor's and Blanco's alleged misconduct. It contains detailed findings about the ways in which Debtor and Blanco violated the Public Utility Act, Commission Rules, and Debtor's own Water and Sewer Service Extension Policies (the "Debtor Policies").

Section F of the FRD discusses 16 water and sewer line extension agreements (together, the "LEAs"), including the Agreement. Section F focuses primarily on the requirement in each LEA that the developer pay non-refundable fees similar to the Improvement Fees. The hearing examiner concluded that the fees are similar to "impact fees" or "utility expansion charges," which are charged to new utility customers to pay the cost of capital improvements necessary to provide service to them.

The hearing examiner also mentioned the Construction Cost in the Agreement and similar costs in the other LEAs. She briefly summarized the provision in each LEA requiring Debtor to reimburse the cost of constructing new lines (similar to the Construction Cost), and noted that Debtor would be relieved of this obligation if the Commission determined that such cost could not be included in Debtor's rate base.[4]

The hearing examiner further noted that Debtor's Policies required it to file all LEAs with the Commission, but that Debtor had only filed two of the 16 LEAs. Further, a Commission Rule[5] required Debtor to file reports of all line extensions. The hearing examiner found that Debtor did not file "at least a half a dozen" such reports. The hearing examiner noted, however, that "[a] report is for informational purposes and does not constitute an application for authority

---

[3] Debtor sought to disqualify Ms. Glick based on alleged bias, but the effort failed. FRD, p. 7.
[4] FRD, p. 56.
[5] 17.5.440.10(A) NMAC.

-3-

Case 13-10742-t7    Doc 195    Filed 08/20/14    Entered 08/20/14 09:36:44 Page 3 of 10

to engage in the reported undertaking."

The hearing examiner concluded that Debtor violated the Public Utility Act, the Rules, and Debtor's Policies as follows:

(a) The Improvement Fees and similar impact fees were improper because Debtor's use of the funds was not limited to the cost associated with the development related to the LEA. The hearing examiner concluded that the loose structure of the impact fees and the lack of controls over how the money was spent meant that the fees amounted to an unapproved rate assessment;

(b) The Improvement Fees and similar impact fees violated Debtor's Policies because they were not designed to recover the cost of specific capital projects;

(c) Most of the LEAs were not filed with the Commission, in violation of the Debtor's Policies; and

(d) The Debtor did not report most of the extensions and system improvements, in violation of the Rules.

The hearing examiner recommended that the Commission fine Debtor $50,000 per LEA for such violations. The hearing examiner did not rule on or even address whether the Construction Cost could be included in Debtor's rate base or whether the Agreement should remain in force.

On August 12, 2010, the Commission entered a final order adopting the hearing examiner's FRD, with certain modifications not relevant here. Debtor appealed the final order to the New Mexico Supreme Court. On September 7, 2011, the New Mexico Supreme Court affirmed the final order.

On March 8, 2013, Debtor filed this bankruptcy case. Bright View timely filed the

Claim.

## II. DISCUSSION

Allowance of a proof of claim is governed by 11 U.S.C. § 502(a) and Fed.R.Bankr.P. 3001(f). Under those sections, a properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." *Kittel v. First Union National Bank (In re Kittel),* 2002 WL 924619, *6 (10th Cir. BAP 2002) (citing *Fullmer v. United States (In re Fullmer)*, 962 F.2d 1463, 1466 (10th Cir.1992), abrogated on other grounds, *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000)). A claim is deemed allowed unless an interested party objects. 11 U.S.C. § 502(a). "The objecting party has the burden of going forward with evidence supporting the objection." *Allen v. Geneva Steel Co. (In re Geneva Steel Co.),* 260 B.R. 517, 524 (10th Cir. BAP 2001). "Once the objecting party has reached this threshold, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim." *Id.* (citing *Agricredit Corp. v. Harrison (In re Harrison),* 987 F.2d 677, 680 (10th Cir.1993).

A. <u>The Hearing Examiner Did Not Determine that the Construction Cost Cannot be Included in Debtor's Rate Base.</u>

Debtor's main argument in support of its objection is that the hearing examiner's findings and conclusions in the FRD constitute a Commission determination that the Construction Cost "may not be included in PHUC's rate base." Debtor appears to suggest that because it collected the Improvement Fees from Bright View, which amounted to an unauthorized assessment of a rate, Debtor is necessarily prohibited from adding the Construction Cost to its rate base.

This argument is unavailing. Debtor conflates two entirely separate provisions of the Agreement. The Improvement Fees were owed *by* Bright View *to* Debtor, and were paid in full. Though the hearing examiner addressed the Improvement Fees and similar fees at length,

-5-

nothing in Bright View's Claim relates to such fees.  The Reimbursement Obligation, on the other hand, is owed *by* Debtor *to* Bright View, and much of it has not been paid.  The Claim only relates to the unpaid portion of the Reimbursement Obligation.  The hearing examiner's finding that the Improvement Fees were inappropriate reflects negatively on the Debtor, but has nothing to do with the allowability of Bright View's Claim.

With respect to the Construction Cost, the hearing examiner did not address, and made no finding about, whether it was includable in Debtor's rate base.  There is no evidence that this issue was ever brought before the Commission, either in the Administrative Proceeding or elsewhere.  Debtor's failure to seek inclusion of the Construction Cost in its rate base is not equivalent to an adverse ruling by the Commission on that issue.  *See* Agreement, section VI (if the Commission "*determines* that the cost of said sewer and water lines may not be included in [Debtor's] rate base, … [Debtor] shall have no further obligation …."  (emphasis added).  Debtor therefore is not excused from the Reimbursement Obligation based on the hearing examiner's findings in the FDR.

B.     The Agreement is Not A Security.

Debtor also argues that the Agreement is void because it constitutes a "security" that was issued without Commission approval.  Under the New Mexico Public Utility Act, a "security" means "stock, stock certificates, bonds, notes, debentures, mortgages or deeds of trust or similar evidences of indebtedness issued, executed or assumed by a utility."  N.M.S.A. § 62-3-3(F).  A security is generally understood to be a form of an "investment contract," i.e. an investment made in a common enterprise with the expectation of profits earned solely through the efforts of others.  *See generally S.E.C. v. W.J. Howey Co.,* 328 U.S. 293, 298 (1946).  *Cf State v. Souter,* 272 P.3d 154, 162 (N.M. Ct. App. 2012) (for purposes of securities fraud, a "security" is a[n]

ownership right or a creditor relationship and includes any investment contract and a limited liability company interest" and includes contracts under which an individual invests money in a company for profit.) (citing UJI 14–4310 NMRA).

The Agreement - under which Debtor agreed to reimburse out-of-pocket costs, over 40 years, without interest - does not fall within the Public Utility Act's definition of a "security." It was not issued by Debtor, is not a stock or bond, does not give Bright View any ownership right in Debtor, and is not evidence of an investment. Rather, the Agreement is a bilateral construction contract, with substantial performance obligations on both sides. *See Plains Elec. Generation and Transmission Co-op., Inc. v. New Mexico Public Utility Commission,* 967 P.2d 827, 833 (N.M. 1998) (declining to adopt a definition of "security" which would "include all contractual obligations to pay in the future for consideration presently received"... because such a definition "would transform all loan agreements into securities" under Section 62-3-3). Recovering out of pocket costs over time, without interest, is not an investment.

    C.    <u>Even if it Were a Security, the Agreement is Not Void</u>.

Further, even if the Agreement qualified as a security, it would not automatically be void - as Debtor contends - because Debtor failed to obtain the Commission's prior approval. N.M.S.A. § 62-6-11 provides:

> All securities issued, assumed or guaranteed without application to and approval of the commission, except the securities mentioned in Section 62-6-8 and 62-6-8.1 NMSA 1978 are *voidable with the consent of the commission.*[6]

(emphasis added). There is no evidence Debtor has asked for Commission approval to void the Agreement, nor did the hearing examiner address the issue or give such approval in the FRD. Unless and until such approval is sought and obtained, the Agreement remains in force even if it

---

[6] Debtor misquotes this statute in its Objection, substituting "without" for "with." Objection, p. 4. The Court will give Debtor the benefit of the doubt and assume that the error was not intended to mislead. Debtor corrected the error in its Reply. Reply, p. 9.

is a security.

D. <u>Debtor's Failure to Seek Prior Commission Approval Did Not Render the Agreement Unenforceable</u>.

Next, Debtor argues that the Agreement cannot be enforced because Debtor did not file the Agreement with the Commission as required by the Public Utility Act. In support of this argument Debtor points to N.M.S.A. § 62-6-13:

> Application shall be made by the interested public utility by written petition containing a concise statement of the proposed transaction, the reason therefor and such other information as may reasonably be required by the commission. Upon the filing of such application, the commission shall promptly investigate the same, with such hearing and upon such notice as the commission may prescribe, and unless the commission shall find that the proposed transaction is unlawful or is inconsistent with the public interest, it shall give its consent and approval in writing.

The quoted section applies to acquisitions, consolidations, and mergers of public utilities, *see* NMSA § 62-6-12,[7] not to LEAs like the Agreement. Nothing in the Public Utility Act requires utilities to obtain prior approval of LEAs.

Commission Rules do establish a protocol for handling LEAs. Rule 17.5.440.10(A) requires a utility to file a report with the Commission before making "any extension, improvement, or addition to any transmission or distribution line, plant, facility, or system which will have an original cost under the uniform system of accounts of $100,000 or more and for which the utility intends to seek rate base treatment under the Public Utility Act." Such report "is for informational purposes" and does not "constitute an application by the utility for authority to engage in the reported undertaking," though the Commission may take further action based on the report. 17.5.440.10(B) NMAC.

---

[7] That section, titled "Acquisitions, consolidations, etc.; consent of commission," describes the circumstances under which public utilities may merge with another entity.

-8-

Though the rule is silent about the consequences of Debtor's failure to file the reports, the Court finds that any such consequences would not include Bright View's inability to enforce the Agreement. The Court does not believe a public utility could unilaterally evade its contractual obligations by flouting the Commission Rules. Further, no report need be filed unless "the utility intends to seek rate base treatment under the [Public Utility Act]." Debtor has provided no evidence of such an intention. Rather, the lapse of nearly ten years between the execution of the Agreement and the bankruptcy filing, with no attempt to include the Construction Cost in the rate base, indicates an intention to the contrary.

D. <u>Bright View's Claim for the Construction Cost is Not Reduced As a Result of the Commission's Ruling on the Improvement Fee</u>.

Finally, Debtor contends that even if Bright View has a valid claim, the proper claim amount is only $144,488.31. The basis for this argument is that that Bright View's claim should be limited to the amount of Improvement Fees Bright View *should* have paid Debtor (under the FRD, this figure arguably is $238,984). Debtor further contends this amount should be reduced (to $144,488.31) by the Reimbursement Obligation payments it has already made.

As the Court explained above, Improvement Fees and Construction Costs are not interchangeable, or even related. Bright View is not seeking a refund of any portion of the Improvement Fees. The hearing examiner's determination that $238,984 was a reasonable Improvement (or impact) fee for the Coronado Ridge subdivision therefore has absolutely nothing to do with the amount of the Reimbursement Obligation.

Debtor has not carried its initial burden of presenting evidence or legal argument supporting its objection to the Claim Amount. The burden has therefore not shifted to Bright View to prove the validity and amount of its claim. *See Allen v. Geneva Steel Co. (In re Geneva*

-9-

*Steel Co.),* 260 B.R. 517, 524 (10th Cir. BAP 2001); *Agricredit Corp. v. Harrison (In re Harrison),* 987 F.2d 677, 680 (10th Cir.1993). Unless and until the Court orders otherwise, it will presume that the Claim Amount is valid.

In light of the pending motions to convert the case to Chapter 7 or appoint a trustee, the Court may reconsider this matter based on another objection at a later time. *See* 11 U.S.C. § 502(j) ("A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case.").

## V. CONCLUSION

The Court finds that Debtor's objections to Bright View's claims are without merit and are overruled. The Court will enter a separate order consistent with this memorandum opinion.

_____
Honorable David T. Thuma
United States Bankruptcy Judge

Entered: August 20, 2014.

Copies to:

William F. Davis
6709 Academy NE, Suite A
Albuquerque, NM 87109

Kelly P. Albers
650 Montana Ave, Ste. D
Las Cruces, M 88001-4294

Ronald Andazola
P.O. Box 608
Albuquerque, NM 87103

-10-