UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PICACHO HILLS UTILITY COMPANY, INC.,            Case No. 11-13-10742 TL

    Debtor.

## MEMORANDUM OPINION

Debtor Picacho Hills Utility Company, Inc. is a small water and sewer utility in Las Cruces, New Mexico. The United States Trustee (the "UST") and creditor Bright View Land Company, Inc. ("Bright View") moved to convert this case to Chapter 7 pursuant to 11 U.S.C. § 1112(b).[1] Alternatively, Bright View moved to appoint a Chapter 11 trustee pursuant to § 1104. The Court tried the matter on September 3 and 4, 2014. For the reasons set forth below, the Court finds that cause exists to convert the case to Chapter 7.

### I.     FACTS

The Court finds the following facts, taken from the evidence presented at trial, and from the Court taking judicial notice of the docket in this bankruptcy case.[2]

*The Debtor*

Debtor, a New Mexico corporation, operated as a public utility as defined in section 3(G) of the New Mexico Public Utility Act, N.M.S.A. § 62-3-1 et seq. Prepetition, Debtor provided water and sewer service to approximately 1,000 residences in and around the Picacho Hills

---

[1] Creditor Peter Gould initially joined in the motion to convert, doc. 148. Mr. Gould later withdrew the joinder to avoid the cost of participating in the trial, but indicated that he still believes conversion is in the best interest of creditors. Mr. Gould filed a claim in the amount of $103,505.90.

[2] *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade,* 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (A "bankruptcy court [is authorized] ... to take judicial notice of its own docket.").

development near Las Cruces, New Mexico. Debtor was regulated by the New Mexico Public Regulation Commission (the "Commission").

Debtor is wholly owned by Stephen C. Blanco ("Blanco"). Blanco has been Debtor's president for approximately 30 years. Debtor rented space from Blanco's house at a rate of $400 per month and operated out of his house, as least in part.

Debtor had a handful of employees including Lauri Lucero, who performed administrative functions. Randy Travis, an independent CPA, performed accounting services for Debtor for approximately 20 years.

Debtor's business practices and accounting procedures were fairly lax. Blanco withdrew cash from Debtor whenever he needed it. Mr. Travis would book the withdrawals as rent payments, payroll, reimbursable expenses, or employee advances.

*The Administrative Proceeding*

On or about October 23, 2008, the Commission commenced Case No. 08-00315-UT (the "Administrative Proceeding") to investigate Debtor's compliance with the Public Utility Act and the Commission's rules, regulations, and orders (together, the "Commission Rules"). The hearing examiner, Carolyn R. Glick, held a final hearing in the Administrative Proceeding over four days in February, 2010.

The Administrative Proceeding afforded Debtor a full and fair opportunity to litigate the matters at issue. The final hearing included seven witnesses and 34 exhibits. Pre-hearing procedure, discovery, and preparation were comprehensive and took place over 15 months.

On May 26, 2010, the hearing examiner completed her Final Recommended Decision ("FRD").[3] The FRD is 88 pages long. On August 12, 2010, the Commission issued its Final Order in the Administrative Proceeding (the "Final Order"), adopting the hearing examiner's

---

[3] Debtor sought to disqualify Ms. Glick based on alleged bias, but the effort failed. FRD, p. 7.

FRD with few exceptions. Debtor appealed the Final Order to the New Mexico Supreme Court, which affirmed the Commission's decision in all respects.

The Commission made various findings regarding Debtor's and Blanco's misconduct. Those findings are binding upon this Court under principles of collateral estoppel/issue preclusion.[4] Among those findings are:

 (a) Debtor repeatedly violated Commission Rules;

 (b) Blanco gave false testimony;

 (c) Blanco attempted to intimidate potential witnesses;

 (d) Blanco converted substantial Debtor funds for personal and other uses;

 (e) Debtor engaged in multiple unauthorized financial transactions; and

 (f) Debtor failed to account for significant amounts of money in its books.

As a result of Debtor's misconduct, the Commission recommended that a receiver be appointed to liquidate its assets. The Commission also fined Debtor $50,000 and Blanco $950,000.

The Commission ordered Debtor to include language in any loan documents stating that any water rights owned by Debtor (the "Water Rights") cannot be separated from the utilities without Commission approval.

---

[4] When applying principles of collateral estoppel based on state court judgments, the bankruptcy court looks to the applicable requirements of the state in which the judgment was entered. *See Gonzales v. Hernandez,* 175 F.3d 1202, 1204 (10th Cir. 1999) ("A federal court is required to give a state court judgment the same preclusive effect it would be given under the laws of the state in which it was rendered.") (citations omitted). Under New Mexico law, administrative adjudications can form the basis for collateral estoppel. *See Shovelin v. Cent. New Mexico Elec. Co-op, Inc.,* 850 P.2d 996, 1001 (N.M. 1993) (noting that "administrative adjudicative determinations may be given preclusive effect if rendered under conditions in which the parties have the opportunity to 'fully and fairly litigate the issue at the administrative hearing'"). The Court finds that Debtor was given a full and fair opportunity to litigate before the Commission and that the FRD, as adopted by the Final Order, can fairly be the basis for issue preclusion.

*The Receiver Action*

On September 2, 2010, creditor Bank of the Rio Grande (the "Bank"), filed an action in the Third Judicial District Court, Dona Ana County, New Mexico, styled *Bank of Rio Grande v. Picacho Hills Utility Company, Inc., et al.*, No. D-307-CV-201002416 (the "Receiver Action"). The Commission intervened in that action and joined in the Bank's application to appoint a receiver. The state court appointed Robert Martin as Receiver on November 14, 2011.

When the Receiver took over, Debtor had $1,000 in the bank. Blanco had withdrawn over $180,000 in cash from Debtor's account at Bank of the Rio Grande in the 18 months prior to the Receiver's appointment. Approximately $7,200 constituted rent payments.[5] Some of the money was withdrawn to pay Blanco's salary and to reimburse him for business expenses, although it is unclear how much.

Between May and August of 2011, Blanco caused Debtor to issue two checks totaling $24,000 to Lauri Lucero. Unlike other checks issued to Ms. Lucero, the memo line did not indicate what the payments were for. Ms. Lucero typically earned between $2000 and $3000 per month. Blanco testified that he issued the check for $20,000 to reimburse Ms. Lucero for computer equipment she purchased for Debtor. This testimony was not credible.

The only documents Blanco provided to the Receiver were Debtor's accounting records for 2010 and 2011. The Receiver requested access to Debtor's computers, which were located in Blanco's home, but Blanco refused.

After a lengthy mediation, the parties reached a settlement in the Receiver Action. As part of the settlement, Debtor and Blanco agreed that the Bank held a valid and perfected lien on the Water Rights. They also agreed that all of Debtor's assets, including the Water Rights, would be sold by the Receiver.

---

[5] Blanco rented space to Debtor at a rate of $400 during the 18-month period.

The state court entered a stipulated partial judgment (the "Judgment") memorializing the settlement agreement on August 31, 2012 at 9:51 a.m. Blanco's counsel did not sign the Judgment, but Blanco was aware of it and had agreed to the settlement represented by the Judgment through his counsel, Alex Chisolm.[6]

*The Conversion of Debtor's Water Rights*

About five hours after the Judgment was entered, unbeknownst to the Receiver, Blanco caused Debtor to convey 1,876 AFY of Debtor's water rights (the "Water Rights") to an entity called Rio Grande Investments, LLC, which then conveyed the Water Rights to Resurrection Mining, LLC. Though it is not entirely clear what interest Blanco had in Rio Grande Investments and/or Resurrection Mining, he acted as though he maintained control over the transferred Water Rights.

Blanco knew the Judgment prohibited him from transferring the Water Rights. Nevertheless, by the conveyance Blanco intended to maintain control over the Water Rights and prevent the Receiver from consummating a proposed sale of Debtor's assets.

In January and February of 2013, Blanco began contacting various attorneys to represent Debtor in bankruptcy. In lieu of a retainer, Blanco offered the attorneys a portion of the Water Rights. Blanco also pressured David Esparza, a hydrology consultant with whom he often worked, to sell the Water Rights to raise money. Blanco was ultimately unsuccessful, and the Water Rights were later sold by the Receiver.

*The Chapter 11 Case*

Debtor filed this Chapter 11 case on March 7, 2013. Various creditors moved to dismiss the case pursuant to § 1112(b) based on Debtor's alleged bad faith filing. Alternatively, several

---

[6] At one point Blanco suggested he did not know whether he agreed to the Judgment and that he was generally unaware of its provisions. This testimony, along with Blanco's testimony that he did not know he was prohibited from transferring the water rights, was not credible.

parties asked the Court to abstain from exercising jurisdiction pursuant to § 305, and to excuse turnover pursuant to § 543.

The Court held a trial on those motions in April 2013. On April 26, 2013, the Court issued a Memorandum Opinion, in which it declined to dismiss the bankruptcy case based on Debtor's alleged bad faith filing and instead opted to temporarily abstain from exercising jurisdiction to allow the Receiver to sell Debtor's assets.

The Receiver sold all of Debtor's assets, including the Water Rights, in or around January 2014. Shortly thereafter, the bankruptcy case was reactivated. On March 31, 2014, the net proceeds, which totaled $726,191.41, were deposited into the Court registry. As of August 31, 2014, $666,112.43 remained in the Court registry.

Debtor's schedules reflect liabilities of $1,369,688.61. Filed claims exceed $1,865,000.

Debtor objected to five of the seventeen filed claims. Debtor takes particular issue with the $931,547.91 claim of Bright View, which is the largest claim filed by any creditor.

In its objection to Bright View's claim, Debtor argued that the Commission's findings and conclusions in the FRD constituted, inter alia, a determination that certain construction costs incurred by Bright View cannot be included in Debtor's rate base. According to Debtor, such a determination means that Bright View's claim should be disallowed. The Court overruled Debtor's objection to the Bright View claim.[7]

Despite his protestations to the contrary, Blanco is not particularly knowledgeable about the claims filed in this case. He admitted that he relies on his attorneys and his accountant to

---

[7] At a status conference on the Bright View claim objection, Debtor, through counsel, waived its right to an evidentiary hearing and consented to the Court ruling on the papers filed in connection with the claim objection. Those papers included the contract between Bright View and Debtor, the FRD, and the Final Order. Shortly after the Court overruled the claim objection, Debtor moved for reconsideration on the grounds that Debtor's counsel did not have the authority to waive its right to an evidentiary hearing on the claim objection. The Court has not ruled on that motion.

-6-

provide the basis for any objections. Blanco also testified that he intends to pay smaller vendors before paying larger vendors.

A motivating factor in Blanco's administration of the bankruptcy case is the prospect of generating a surplus. For that reason he has focused primarily on objecting to the largest claims. Blanco can only get a dividend on his equity interest if he prevails on his objection to Bright View's claim.

Debtor is unlikely to pursue recovery of, or even investigate, the prepetition transfers to Blanco and Ms. Lucero.

Debtor is no longer operating, and rehabilitation is not possible. The sale proceeds are the only assets available for distribution to creditors.

There is no evidence that Debtor intends to pursue confirmation of a Chapter 11 plan. Blanco testified that he believes he can "wrap up" the Chapter 11 case in one month.

## II. DISCUSSION

### A. 11 U.S.C. § 1112(b): Conversion for "Cause".

Section 1112(b) provides: "[T]he court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause...."

Section 1112(b)(4) lists 16 grounds that constitute "cause" for conversion or dismissal. The list is not exhaustive. *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1987) (list of enumerated grounds is not exhaustive); *In re SB Props. Inc.*, 185 B.R. 198, 203 (E.D. Penn. 1995) (stating that the "legislative history of § 1112(b) confirms that what may constitute 'cause' is non-exhaustive").

Once cause is established under § 1112(b), the Court must dismiss or convert the case, or

appoint a Chapter 11 trustee, unless the court finds "unusual circumstances ... that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(2). "The bankruptcy court has broad discretion …" in fashioning relief under § 1112(b). *Hall,* 887 F.2d at 1044.

        i.    <u>Debtor No Longer Has a Legitimate Chapter 11 Purpose</u>.

To remain in Chapter 11, debtors are generally expected to "point to a reasonable plan of reorganization …" involving liquidation or rehabilitation. *In re Vincens,* 2008 WL 2855630, * 1 (10th Cir. 2008); *In re East End Development, LLC,* 491 B.R. 633, 641 (Bankr. E.D. N.Y. 2013) (noting that appropriate uses of Chapter 11 include reorganization, rehabilitation, and liquidation).[8] "Where the debtor is a corporate shell" and reorganization is not possible, courts may "convert a reorganization proceeding to a straight [Chapter 7] bankruptcy [case].…" *Hall,* 887 F.2d at 1044-1045. *See also Vincens,* 2008 WL 2855630 (affirming dismissal for cause where the business was non-operational, debtor had no income and no business records, and debtor failed to point to a reasonable plan of reorganization). To avoid conversion or dismissal, a defunct Chapter 11 debtor must have some special ability to maximize value for creditors. *See In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 123 (3rd Cir. 2004) (noting that a Chapter 11 case "can be used to maximize value for creditors"); *Brook Valley IV,* 347 B.R. at 673 (same).

Here, Debtor has no operations or income. Rehabilitation is impossible, and Debtor's assets have already been liquidated. Blanco has not indicated any intention of proposing a Chapter 11 plan or reorganizing. Instead, he intends to administer claims, pay creditors, and then presumably move to dismiss. Blanco essentially wants Debtor to remain in Chapter 11 long enough to generate a surplus, which he believes will take one month. This is not a legitimate

---

[8] *See also Lange v. Schropp (In re Brook Valley IV),* 347 B.R. 662, 673 (8th Cir. BAP 2006) ("Chapter 11 cases are filed on behalf of … businesses in order to preserve and protect their assets through reorganization, or in order to effect an orderly liquidation of such assets.").

reason to burden creditors with the higher fees associated with the administration of a Chapter 11 case. Blanco's one-month estimate is not at all realistic.

Further, even if Debtor did want to file a post-liquidation plan for distribution, it is difficult to see how such a plan would be better than immediate conversion. There is no need for a plan and disclosure statement to distribute cash on allowed claims in accordance with the distribution scheme under the Bankruptcy Code.

### ii. Debtor Refuses to Investigate Prepetition Transfers.

"[D]ebtors-in-possession have a fiduciary duty to maximize the value of the estate." *In re Reliant Energy Channelview LP,* 594 F.3d 200, 210 (3rd Cir. 2010). That duty includes making "impartial investigations and decisions in pursuing claims on behalf of the estate." *Matter of Fiesta Homes of Georgia, Inc.,* 125 B.R. 321, 326 (Bankr. S.D. Ga. 1990) (internal citations omitted). A number of courts have found "cause" to convert or dismiss where the debtor in possession has a conflict of interest in properly investigating and pursuing potential fraudulent transfers. *See, e.g., In re Brutsche,* 476 B.R. 298, 309 (Bankr. D.N.M. 2010) (finding "cause" under § 1112(b) where the court had serious doubts "about whether [d]ebtor would adequately investigate … and pursue potential [fraudulent transfer] claims against his spouse"); *In re Fisher,* 2008 WL 1775123, *12 (Bankr. D. Mont. 2008) (remarking that conversion was appropriate because "a Chapter 7 would … no doubt, investigate [d]ebtors' alleged fraudulent conveyances"). *Cf In re Concord Coal Corporation*, 11 B.R. 552, 554 (Bankr. S.D. W. Va. 1981) (investigation of transfers to one-third owner could not be expected when that owner was in charge of management).

The Court is not convinced that Debtor is capable of pursuing estate causes of action in a professional and unbiased manner. The uncontroverted evidence shows Debtor transferred

$180,000 to Blanco and $24,000 to Laurie Lucero within two years before the petition date. No investigation of the transfers has been made, and Blanco was not credible when he explained their purpose. Under these circumstances, a Chapter 7 trustee should be installed to investigate the suspect transfers, unburdened by any conflict of interest.

        iii.        <u>Blanco's History of Misconduct</u>.

The parties seeking conversion spent most of the trial presenting evidence about Debtor's and Blanco's prepetition misconduct. Such misconduct can constitute "cause" under § 1112(b), though in most cases it is relevant to whether the debtor filed a petition in bad faith. *In re Melendez Concrete Inc.,* 2009 WL 2997920, at *3 (Bankr. D.N.M. 2009); *In re Frieouf,* 938 F.2d 1099, 1105 (10th Cir. 1991).

As Debtor correctly points out, entities seeking bankruptcy relief typically have a history of lax business and accounting practices. *In re Colorado-Ute Elec. Ass'n*, Inc., 120 B.R. 164, 174 (Bankr. D. Colo. 1990) (recognizing that "typically there is some degree of mismanagement or incompetence in most businesses which file for protection under Chapter 11"). Consequently, a showing of some prepetition misconduct will not alone be enough to establish "cause" in most cases. However, where as here the misconduct was so severe, it can be given greater weight as part of the totality of circumstances establishing cause.

Blanco has consistently flouted laws, regulations, court orders, Commission Rules, and the rights of creditors in order to preserve Debtor's property for himself. The Commission found that while operating the utility, Blanco converted substantial Debtor funds for personal use, and engaged in multiple unauthorized financial transactions. Blanco transferred tens of thousands of dollars to himself and his employee before the Receiver was appointed. After agreeing to allow the Receiver to sell Debtor's assets, Blanco transferred the Water Rights to entities in which he

-10-

had an interest. Further, Blanco was dishonest in front the Commission, and portions of his testimony in this Court lacked credibility. The Court is not confident in Blanco's willingness to act as a fiduciary of the estate.

Based on the facts that Debtor no longer has a legitimate Chapter 11 purpose; Blanco's failure to investigate fraudulent transfers; his apparent conflict of interest; his lack of credibility; and his history of misconduct, the Court concludes that cause exists to convert this case to a Chapter 7 case.

> B. Debtor Has Not Established "Unusual Circumstances".

Once "cause" has been established, the Court must convert, dismiss, or appoint a trustee unless it specifically identifies "unusual circumstances ... that establish that such relief is not in the best interest of creditors and the estate." 11 U.S.C. § 1112(b)(2). "The code does not define 'unusual circumstances' within the meaning of 11 U.S.C. § 1112(b)." *In re Orbit Petroleum, Inc.,* 395 B.R. 145, 148 (Bankr. D.N.M. 2008) (internal quotations omitted). Nevertheless, "the import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding." *Id.* (quoting 7 Collier on Bankruptcy ¶ 1112.04[3] (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2008)).

Here, Blanco argues that "unusual circumstances" exist because, if Debtor remains in possession, all allowed claims will be paid in full. More specifically, Blanco contends that he is the best person to administer claims because: (1) he has a long-standing relationship with many of the claimants and will be able to effectively negotiate with them; (2) he is already very knowledgeable about the filed claims; and (3) he will successfully object to the claims of Bright View and other creditors.

These arguments are unavailing. First, the relationship between Blanco and many large claimants has completely broken down. Two large creditors - Bright View and Peter Gould - support conversion. David Esparza, who asserted a claim for $92,127, testified against Blanco at the final hearing.

Second, there is no evidence that Blanco has any specialized knowledge about the claims in this case. He testified that he relied on his attorneys and his accountant to determine whether claims are valid. In the one instance where the Court ruled on a claim objection, Debtor sought reconsideration using entirely new arguments and evidence.

Finally, the Court is not convinced that Debtor would be more able than a Chapter 7 trustee to generate a surplus through the claims objection process. Debtor spent much of the trial attempting to demonstrate why Bright View's claim should be disallowed. The Court previously overruled Debtor's objection to the claim, based on different evidence. Though some of the evidence presented at the trial would likely have been relevant to the previous ruling, the new evidence was not conclusive. It does not inspire confidence that the new evidence was not presented earlier. In any event, Debtor would have standing in a Chapter 7 case to object to Bright View's claim if there is a reasonable possibility of a surplus after all claims are paid. *In re 60 East 80th Street Equities, Inc*., 218 F.3d 109, 115 (2nd Cir. 2000) ([A] debtor is a party in interest and has standing to object to a claim where there could be a surplus after all claims are paid.") (citing 7 Collier on Bankruptcy § 502.02[2][c] (Alan N. Resnick and Henry J. Sommer, eds., (15th ed. rev. 2008)).

In sum, the Court is not convinced that unusual circumstances exist which demonstrate that the estate, the creditors, or the policy behind Chapter 11 would be better served by allowing the case to remain in Chapter 11. The Court also believes that conversion, rather than dismissal

-12-

or the appointment of a Chapter 11 trustee, is in the best interests of the estate. Conversion will allow a neutral, unbiased trustee to administer claims and investigate transfers without incurring the administrative costs associated with a Chapter 11 proceeding.

C.  Motion to Appoint a Trustee Under § 1104.

Because the Court is converting the case to Chapter 7, it need not reach the issue of whether a Chapter 11 trustee should be appointed under § 1104. Bright View's alternative request for such relief will therefore be denied as moot.

III.  CONCLUSION

The Court finds that the case should be converted to Chapter 7 for cause under § 1112(b). The Court will enter a separate order consistent with this opinion.

_____
Honorable David T. Thuma
United States Bankruptcy Judge

Entered: September 17, 2014

Copies to:

William F. Davis
6709 Academy NE, Suite A
Albuquerque, NM 87109

Kelly P. Albers
650 Montana Ave, Ste. D
Las Cruces, M 88001-4294

Ronald Andazola
P.O. Box 608
Albuquerque, NM 87103

Emily A. Franke
P.O. Box 3170

Albuquerque, NM 87190-3170

Steven L. Gonzales
1307 Rio Grande Blvd. NW
Suite 8
Albuquerque, NM 87104

Andrew Philip Knight
P.O. Box 5469
Santa Fe, NM 87505