UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PICACHO HILLS UTILITY COMPANY, INC.,

Case No. 13-10742 tl7

Debtor.

## OPINION

Before the Court is Debtor's motion to reconsider an order overruling a claim objection. Shortly after the motion was filed the Court converted the case from chapter 11 to chapter 7. One result of the conversion is that the motion languished for several years. Now that the chapter 7 trustee is nearing completion of his case administration, the Court needs to rule on the motion. Being sufficiently advised, the Court finds that the motion is not well taken and should be denied.

I. FACTS

For the limited purpose of ruling on the motion to reconsider, the Court finds:[1]

Debtor, a New Mexico corporation, was a public utility as defined in section 3(G) of the New Mexico Public Utility Act, N.M.S.A. § 62-3-1 et seq. Debtor provided water and sewer service to approximately a thousand houses in and around the Picacho Hills development near Las Cruces, New Mexico. Debtor was regulated by the New Mexico Public Regulation Commission and is wholly owned by Stephen C. Blanco, Debtor's president.

On July 25, 2003, Debtor and Bright View Land Company, Inc. entered into a Water and Sewer Extension Agreement. Under the agreement, Bright View agreed to construct and convey

---

[1] The Court took judicial notice of its docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

to Debtor certain water and sewer lines needed to extend utility service to Bright View's "Coronado Ridge" subdivision in Picacho Hills. Upon completion and conveyance of the water and sewer lines, Debtor agreed to reimburse Bright View for its "Line Extension Costs" in equal annual payments over 40 years, without interest.

The agreement contained the following proviso regarding Debtor's obligation to repay the Line Extension Costs:

> [I]n the event the Public Regulation Commission for the State of New Mexico determines that the cost of said sewer and water lines may not be included in PHUC's [Debtor's] rate base, then in such event, PHUC shall have no further obligation to make the payments due under the terms of this paragraph.

The agreement also obligated Bright View to pay Debtor $345,060 for "the cost of necessary improvements to the sewer plant to serve Coronado Ridge subdivision only" (an "Impact Fee"). Debtor did not file the Bright View agreement with the Commission and did not notify the Commission of the proposed line extension.

Bright View built the necessary water and sewer lines for service to the Coronado Ridge subdivision and conveyed them to Debtor.

On or about October 9, 2007, Debtor petitioned the Commission to allow Debtor to increase the water and sewer rates it charged customers (the "Rate Case"). Based on the documents submitted to the Court, it does not appear that Debtor proposed that Bright View's Line Extension Costs be added to Debtor's rate base.

Hearing examiner Carolyn R. Glick held hearings in the Rate Case and submitted a recommended decision to the Commission on July 6, 2008.[2] The Commission partially adopted

---

[2] This document is not part of the record.

Glick's recommended decision in a final order issued October 23, 2008.[3]

The Rate Case involved a number of issues. The one most relevant to the Bright View claim objection was whether Debtor would have to deduct from its proposed rate base the Impact Fees it had received from developers. The Commission ruled that such a deduction was required because the fees offset Debtor's construction expenses, meaning that there was no net expense that would justify higher rates. The Commission did not rule, however, whether Debtor's obligation to reimburse developers for their Line Extension Costs could be included in its rate base.

Glick held a number of hearings in the Administrative Proceeding. On May 26, 2010, she issued an 88-page Final Recommended Decision ("FRD"). The FRD contained detailed findings about the ways in which Debtor and Blanco violated the Public Utility Act, Commission rules, and Debtor's own water and sewer extension line policies.

Section F of the FRD discussed 16 water and sewer line extension agreements, including the Bright View agreement. Section F focused primarily on the requirement in each agreement that the developer pay non-refundable Impact Fees. The hearing examiner was critical of Debtor's charging and handling of Impact Fee money.

Glick also briefly summarized provisions in each agreement requiring Debtor to reimburse developers for Line Extension Costs. She noted that Debtor would be relieved of such obligations if the Commission determined that the costs could not be included in Debtor's rate base. However, Glick did not determine whether Bright View's Line Extension Costs could be included in Debtor's rate base.

---

[3] In the final order the Commission stated that it "has opened a new docket, Case No. 08-00315-UT, for the purpose of conducting an investigation . . ." (the "Administrative Proceeding"). The Commission opened the Administrative Proceeding because it was disturbed by Debtor's apparent repeated violations of applicable laws, rules, and internal policies.

Glick observed that Debtor's policies required it to file all line extension agreements with the Commission, but that Debtor had only filed two of the 16 agreements.[4]

For Debtor's violations, Glick recommended that the Commission fine Debtor $50,000 for each line extension agreement.

On August 12, 2010, the Commission entered a final order adopting the FRD, with modifications not relevant here. Again, no determination was made about including Bright View's line extension costs in Debtor's rate base. Debtor appealed the final order to the New Mexico Supreme Court. On September 7, 2011, the New Mexico Supreme Court affirmed the Commission's final order.

On March 8, 2013, Debtor filed this bankruptcy case as a chapter 11 case.

Bright View filed a $931,547.91 proof of claim on April 18, 2014, representing the unpaid balance of Bright View's Line Extension Costs. Debtor promptly objected to the claim, arguing that Debtor had no obligation to repay the Line Extension Costs because, by adopting the FRD, the Commission had determined that the costs could not be part of the rate base. Bright View countered that the FRD contained no such determination. From the time Debtor objected to the Bright View claim until the Court ruled, the parties focused solely on the FRD. Neither party mentioned any other Commission order or ruling.

Because of the parties' reliance on the FRD, the Court ordered that "[i]f the Court believes that the Objection could potentially be ruled on based on the submitted papers, it will set a status conference on short notice to the Debtor and Bright View to discuss the matter."[5] The Court held such a status conference on August 4, 2014. At the conference both parties waived the right to a

---

[4] Further, a Commission rule required Debtor to file reports of all line extensions. NMAC § 17.5.440.10(A).

[5] The FRD was among the submitted papers.

final, evidentiary hearing.

The Court overruled the claim objection on August 20, 2014, holding that the FRD did not determine whether Bright View's Line Extension Costs could be included in Debtor's rate base. Nine days later, Debtor filed the motion to reconsider, arguing that its counsel had no authority to waive an evidentiary hearing. Debtor attached 390 pages of proposed additional evidence to the motion, all of which relate to the Rate Case. Included in the proposed new evidence is the Commission's 2008 final order. Debtor's proposed additional evidence does not include a Commission determination excluding Bright View's Line Extension Costs from Debtor's rate base.

Debtor also argued in the motion to reconsider that two witnesses could testify about "the activities and proceedings before and on behalf of the Public Regulation Commission . . . ."

Based on the claims register and the chapter 7 trustee's most recent interim report, it appears the estate will be insolvent regardless of the outcome of this claim objection. Thus, Debtor is "out of the money" and will not be affected by the Court's ruling on the motion to reconsider.

## II.   DISCUSSION

Neither the Federal Rules of Civil Procedure nor the Federal Rules of Bankruptcy Procedure recognize motions for "reconsideration." *Hatfield v. Board of Cnty. Comm'rs for Converse Cnty.,* 52 F.3d 858, 861 (10th Cir. 1995) ("The Federal Rules of Civil Procedure recognize no 'motion for reconsideration.'") (citing *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir. 1991)); *In re Sandia Resorts, Inc.*, 2016 WL 3150998, at *4 (Bankr. D.N.M.). Most courts treat motions to reconsider as motions to amend a judgment or final order (Rule 59)

or for relief from a judgment or final order (Rule 60).[6]

A "motion to reconsider" will be considered under Rule 59 or Rule 60, depending on when it is filed. *In re Sandia Resorts, Inc.*, 2016 WL 3150998, at *4. *See also Hatfield,* 52 F.3d at 861:

> if the motion is filed within ten [now 14] days of the ... entry of judgment, the motion is treated as a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e)" but "if the motion is filed more than ten [now 14] days after the entry of judgment, it is considered as a motion seeking relief from the judgment under Fed.R.Civ.P. 60(b).

(citation omitted).

Because Debtor filed the motion within 14 days after entry of the order sustaining Bright View's claim, the Court will construe it as a motion to alter or amend pursuant to Rule 59(e). *In re McCaull*, 2009 WL 9047528, *3 (10th Cir.) (construing Debtor's motion to reconsider filed within 14 days as a Rule 59 motion); *Buchanan v. Sherrill,* 51 F.3d 227, 230 n.2 (10th Cir. 1995) ("we construe a post-judgment motion filed within [14] days challenging the correctness of the judgment as a motion under Rule 59(e).").[7]

In the Tenth Circuit and elsewhere, grounds for relief under Rule 59(e) are: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)).

Here, Debtor argues it will suffer "manifest injustice" unless the Court vacates the order

---

[6] Claim objections are contested matters. *See* Fed. R. Bankr. P. 3007(b) and 9014(a). In contested matters, Rule 59 is incorporated by Fed. R. Bankr. P. 9023, while Rule 60(b) is incorporated by Fed. R. Bankr. P. 9024.

[7] Debtor's motion refers to § 502(j) (reconsideration of claim allowance or disallowance), but Debtor argued for reconsideration under Rule 59. The Court's analysis therefor focuses on Rule 59 rather than § 502(j). The result would be the same under § 502(j) "cause" standard.

sustaining Bright View's claim. Deciding whether there is "manifest injustice" warranting reconsideration is within the discretion of the trial court. *See United States v. Garibaldi-Bravo*, 2019 WL 6654152, at *2 (10th Cir.) ("our cases have stressed that reconsideration is a discretionary decision that 'will not be reversed on review without a clear showing of abuse of discretion'"); *United States v. Jim*, 891 F.3d 1242, 1252 (11th Cir. 2018) (decision to alter or amend a judgment is in the sound discretion of the court); *Brumfield v. Louisiana State Bd. of Educ.*, 806 F.3d 289, 296 (5th Cir. 2015) (same); *In re Breland*, 2017 WL 2683980, at *2 (Bankr. S.D. Ala.) (same).

Although counsel misconduct can be the basis for reconsideration under the "manifest injustice" standard, *see, e.g.,* 11 Wright & Miller, *Federal Practice and Procedure* § 2810.1, n.19 and accompanying text (3d ed. 2012), second-guessing counsel's strategic decisions rarely prompts a manifest injustice finding. *See, e.g., Risher v. United States*, 2011 WL 1626776, at *2 (W.D. Tenn.) (movant's criticisms of attorney's trial decision insufficient to show manifest injustice); *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (counsel's failure to request a continuance of summary judgment motion not the basis for finding manifest injustice); *Robinson v. Wix Filtration Corp LLC*, 599 F.3d 403, 408 (4th Cir. 2010) (fact that counsel did not receive timely notice of a summary judgment motion because he had not fixed his computer was not enough to constitute manifest injustice); *Fox v. Am. Airlines*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (affirming the district court's denial of a Rule 59(e) motion since "the dismissal of the [ ] suit might have been avoided through the exercise of due diligence"). Courts are reluctant to equate alleged attorney shortcomings with manifest injustice in large part because civil litigants have the right to choose their own counsel and typically are bound by counsel's litigation choices:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client.

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' *Smith v. Ayer*, 101 U.S. 320, 326, 25 L. Ed. 955.

*Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962). This case was cited in *Robinson*:

> As both the Supreme Court and our circuit have consistently recognized, a party voluntarily chooses his attorney as his representative in the action, and, thus, he cannot later "avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S. Ct. 1386, 8 L.Ed.2d 734 (1962) (finding that the district court did not abuse its discretion in dismissing a case, where the petitioner's counsel failed to appear at a duly scheduled pretrial conference and had been deliberately proceeding in dilatory fashion); *Universal Film Exchs., Inc. v. Lust,* 479 F.2d 573, 577 (4th Cir. 1973); *see also Gayle v. United Parcel Serv., Inc.,* 401 F.3d 222, 226–27 (4th Cir. 2005) (finding "that attorney negligence—including allowing a client's case to fall through the cracks—is [not] ... an 'extraordinary circumstance'" justifying equitable tolling"). Rather, "a civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit." *Link,* 370 U.S. at 634 n.10, 82 S. Ct. 1386.

*Robinson*, 599 F.3d at 409; *see also Auto-Owners Ins. Co. v. Summit Park Townhome Assoc.*, 886 F.3d 852, 857 (10th Cir. 2018) (citing and quoting *Link*).

Here, there are several reasons why counsel's decision to waive an evidentiary hearing did not create manifest injustice. First and foremost, the decision was reasonable and prudent. The parties' litigation positions were based entirely on the FRD. Until the Court ruled against Debtor on the claim objection, Debtor never argued or implied that any other Commission order was relevant.

Second, the documentary and other evidence Debtor proffers in support of its motion to reconsider are not relevant to the claim objection. The proposed new evidence, which includes the Rate Case order, neither contains nor alludes to a Commission determination that Bright View's Line Extension Costs must be excluded from Debtor's rate base. The proffered evidence discusses

at some length the Impact Fees paid by Bright View and other developers, but not the propriety of including Line Extension Costs in the rate base.

Finally, if Debtor thinks its counsel committed a serious error, its recourse is a malpractice action, not a litigation "do over."

In its motion to reconsider, Debtor argues that the proper legal standard is set out in *In re Hannon*, 438 B.R. 814 (Bankr. M.D. Pa. 2010). In *Hannon* the court discussed four factors to be weighed when a party, proceeding under Rule 59's "manifest injustice" prong, asks to "withdraw a prior stipulation or stipulated fact." 438 B.R. at 815. The factors are:

> (1) the effect of the stipulation on the party seeking to withdraw the stipulation, ... (2) the effect on the other parties to the litigation, ... (3) the occurrence of intervening events since the parties agreed to the stipulation, ... and (4) whether evidence contrary to the stipulation is substantial. (Citations and commentary omitted.)

438 B.R. at 815-16, citing *Waldorf v. Shuta,* 142 F.3d 601, 616 (3rd Cir. 1998).[8]

The Court disagrees that *Hannon/Waldorf* is applicable because waiving an evidentiary hearing is not akin to stipulating to a fact. Rather, the waiver was one of many litigation strategy decisions an attorney must make in the course of litigation. Just as counsel must decide how much pre-trial discovery to request; what written discovery to propound; whether to file a motion for summary judgment; whether to hire an expert witness; how many depositions to take; and what witnesses to call at trial, counsel sometimes must decide whether a final hearing is needed given the undisputed facts before the court. None of these litigation decisions involve "stipulations" with opposing counsel or about key facts. Having lost the claim objection, Debtor tries for a second chance by improperly characterizing counsel's litigation strategy decision as a stipulation.

Assuming arguendo that the *Hannon/Waldorf* test does apply, the Court weighs the factors

---

[8] In *Waldorf* the defendant sought to withdraw its stipulation that it was liable to plaintiff.

as follows:

| Factor | Discussion |
|---|---|
| 1. The effect of the stipulation on the party seeking to withdraw the stipulation. | Debtor was not adversely affected by counsel's decision to waive an evidentiary hearing. Because the claim objection was based solely on the FRD, no evidentiary hearing was necessary. Further, Debtor's proposed new evidence is not relevant to the issue. Finally, this bankruptcy estate is substantially insolvent and the outcome of the claim objection will have no effect on Debtor. |
| 2. The effect on the other parties to the litigation. | It would add considerable additional expense if the parties were forced to try this claim objection. |
| 3. The occurrence of intervening events since the parties agreed to the stipulation. | The only intervening events were conversion of the case to chapter 7 and the fact that the estate is substantially insolvent. |
| 4. Whether evidence contrary to the stipulation is substantial. | While Debtor submitted 390 pages of documents and offered the testimony of two witnesses, none of the proffered evidence is inconsistent with the FRD or the Court's ruling. |

The *Hannon/Waldorf* factors weigh heavily against granting the motion to reconsider.

### III.    CONCLUSION

Debtor's counsel waived the right to an evidentiary hearing because the Court had all the facts it needed (i.e. the FRD) to rule on the claim objection. When the Court's careful reading of the FRD revealed that the claim objection lacked merit, the Court allowed the claim. Debtor's motion to reconsider callously tries to throw counsel under the bus to get a second chance. The attempt fails. The proffered evidence submitted in support of the motion to reconsider shows that counsel made the right decision, not the wrong one, as the evidence adds nothing relevant to the dispute. The motion to reconsider will be denied by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 24, 2020

Copies to:   Electronic notice recipients

   Stephen Blanco
   P.O. Box 250
   Fairacres, NM 88033